UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DUSTIN JACKSON** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 17-470-SDD-RLB** |
| **FCCI INSURANCE COMPANY, ET AL.** | |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on October 13, 2017.

RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**DUSTIN JACKSON**                                                    **CIVIL ACTION**

**VERSUS**

                                                                                **NO. 17-470-SDD-RLB**

**FCCI INSURANCE COMPANY,
ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion to Remand (R. Doc. 4) filed on August 2, 2017. The Motion is opposed. (R. Doc. 12). Plaintiff has filed a Reply. (R. Doc. 23).

**I.     Background**

On June 22, 2017, Dustin Jackson ("Plaintiff") initiated this action in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, naming as defendants James Cagle, Mr. Cagle's employer Stewart Interior Contractors, L.L.C. ("Stewart"), and Stewart's insurer FCCI Insurance Company (collectively, "Defendants"). (R. Doc. 1-2 at 6-10, "Petition"). Plaintiff alleges that on February 21, 2017, while traveling on Interstate 10 in Bay St. Louis, Mississippi, his vehicle was struck from behind by a 2016 Nissan Frontier driven by Mr. Cagle at a high rate of speed. (Petition, ¶¶ 4-9). Plaintiff alleges that the truck driven by Mr. Cagle is owned by Stewart. (Petition, ¶ 4). Plaintiff asserts that as a result of the crash he suffered severe and disabling injuries including traumatic brain injury and a fractured clavicle. (Petition, ¶ 11).

Plaintiff alleges that because Mr. Cagle "was in the course and scope of his employment" with Stewart when the crash occurred, Stewart is vicariously liable for Mr. Cagle's tortious conduct. (Petition, ¶ 15). Plaintiff alleges that Stewart is liable for his injuries because it failed to

1

provide Mr. Cagle with proper training or supervision, and otherwise hired a driver who was not safe or competent. (Petition, ¶ 16).

On July 21, 2017, Defendants removed the instant action, asserting that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (R. Doc. 1). With regard to diversity of citizenship,[1] Defendants assert that Plaintiff is a Louisiana citizen, Mr. Cagle is a Mississippi citizen, National Trust Insurance Company (alleged by Defendants to be misidentified as FCCI Insurance Company in the Petition) is a citizen of Indiana and Florida, and Stewart is a citizen of Louisiana. (R. Doc. 1 at 1, 3-4). Defendants assert that Stewart's citizenship should be ignored because it was improperly joined as a defendant. (R. Doc. 1 at 4-6). More specifically, Defendants assert that Mr. Cagle was not acting in the course and scope of his employment with Stewart at the time of the incident because he "was traveling home from work at the time of the accident." (R. Doc. 1 at 5). Defendants assert that Plaintiff has no possibility of recovery against Stewart because "Stewart is not responsible for James Cagle's alleged negligence" under the theory of vicarious liability, and the allegations that Stewart did not properly train or supervise Mr. Cagle have no basis in fact. (R. Doc. 1 at 5-6).

On August 2, 2017, Plaintiff filed the instant Motion to Remand, asserting that the Court lacks diversity jurisdiction. (R. Doc. 4).

## II.    Argument of the Parties

In support of remand, Plaintiff argues that under Louisiana law, Mr. Cagle is presumed to have been acting in the course and scope of his employment with Stewart at the time of the accident because he was driving a vehicle owned by Stewart, and that Defendants must rebut this presumption by clear and convincing evidence. (R. Doc. 4-1 at 4-8). Plaintiff further asserts that

---

[1] There is no dispute that the jurisdictional amount required to support diversity jurisdiction is satisfied.

the Court would have to undergo a highly fact-specific inquiry to determine whether he was in fact acting in the course and scope of employment. (R. Doc. 4-1 at 8-11). In sum, Plaintiff argues that piercing the pleadings and conducting a fact-based inquiry to determine whether Stewart is an improperly joined defendant would be inappropriate. (R. Doc. 4-1 at 11-12).

In opposition, Defendants argue that under Louisiana law, whether a tortfeasor is working in the "course and scope of employment" is strictly construed. (R. Doc. 12 at 5-9). While Defendants concede that the 2016 Nissan Frontier driven by Mr. Cagle is in fact owned by Stewart, they nevertheless assert that Stewart is not vicariously liable for Mr. Cagle's actions because he was "signed out of work" and was driving home at the time of the incident. (R. Doc. 12 at 3-4, 10-11). Defendants submit affidavits by James Cagle (R. Doc. 12-1) and P. Gordon Stewart, the sole member of Stewart, (R. Doc. 12-2) in support of a finding that Mr. Cagle was not acting in the course and scope of his employment at the time of the incident. Defendants further assert that even though the Court can and should consider summary judgment type evidence in support of the conclusion that Mr. Cagle was not working in the course and scope of his employment with Stewart, Plaintiff's allegations do not survive a strict Rule 12(b)(6) analysis based solely on the allegations in the Petition. (R. Doc. 12 at 11-13).

In reply, Plaintiff highlights that Defendants "completely ignore" the presumption under Louisiana law that an employee involved in a car crash while driving his employer's vehicle is acting in the course and scope of employment. (R. Doc. 23 at 1-3). Plaintiff further contests the factual assertions raised by Defendants in support of a finding that Mr. Cagle was not acting in the course and scope of his employment. (R. Doc. 23 at 3-5).

**III.   Law & Analysis**

    **A.   Legal Standards**

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) ("jurisdictional facts must be judged as of the time the complaint is filed"). Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c).

The party seeking removal based on improper joinder of a non-diverse defendant bears a "heavy" burden of proving that the joinder was improper. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). Improper joinder of a non-diverse party can be proven when the removing defendant establishes that there is "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Id.* at 646-47. In the latter situation, "the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). The court must resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the plaintiff. *Travis*, 326 F.3d at 649. If the court concludes that the plaintiff has any "possibility of recovery against the party whose

4

joinder is questioned" then joinder is proper and the case must be remanded for lack of subject matter jurisdiction. *Id*.

Generally, a district court should "conduct a Rule 12(b)(6)-type analysis . . . to determine whether the complaint states a claim under state law against the in-state defendant." *Smallwood*, 385 F.3d at 573. Where the plaintiff has omitted or misstated "discrete facts that would determine the propriety of joinder," however, the district court may "pierce the pleadings and conduct a summary inquiry." *Id*. It is within the sole discretion of the court to determine whether the court should conduct a summary inquiry into the plaintiff's possibility of recovery against the allegedly improperly-joined defendant. *See Guillory v. PPG Industries, Inc.*, 434 F.3d 303, 309-10 (5th Cir. 2005) (citing *Smallwood*, 385 F.3d at 573-74)).

Although the court has discretion regarding whether the parties may conduct jurisdictional discovery, the Fifth Circuit has signaled that such discretion should be limited to where the jurisdictional discovery is likely to identify "discrete and undisputed facts" that will summarily resolve the improper joinder issue:

> While the decision regarding the procedure necessary in a given case must lie within the discretion of the trial court, we caution that a summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. In this inquiry the motive or purpose of the joinder of in-state defendants is not relevant. We emphasize that any piercing of the pleadings should not entail substantial hearings. Discovery by the parties should not be allowed except on a tight judicial tether, sharply tailored to the question at hand, and only after a showing of its necessity. Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined. Indeed, the inability to make the requisite decision in a summary manner itself points to an inability of the removing party to carry its burden.

*Smallwood*, 385 F.3d at 573-74. As examples of "discrete and undisputed facts" that could be identified through jurisdictional discovery, the Fifth Circuit offered: "the in-state doctor

5

defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not as alleged, or any other fact that easily can be disproved if not true." *Id*. at 574 n.12.  Furthermore, the Fifth Circuit has "frequently cautioned the district courts against pretrying a case to determine removal jurisdiction. . . ." *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).

"Federal courts are courts of limited jurisdiction [and] possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007); *see also Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand."); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) ("We must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum.").

**B.   Analysis**

For the reasons provided below, the Court concludes that Plaintiff has a possibility of recovery against Stewart, and that the presence of Stewart as a properly joined defendant destroys complete diversity.

Under Louisiana law,[2] "[m]asters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed." La. Civ. Code art. 2320.  For an employer to be held vicariously liable for the

---

[2] There is no dispute between the parties that Louisiana law on "course and scope" applies to the facts of this case.

6

tortious actions of its employee under this provision, the employee must have been "acting within the course and scope of his employment." *Ellender v. Neff Rental, Inc.*, 965 So. 2d 898, 901 (La. 1st Ct. App. 2007). "Generally, courts consider four factors when assessing vicarious liability, including whether the tortious act: (1) was primarily employment-rooted; (2) was reasonably incidental to performance of employment duties; (3) occurred during working hours; and (4) occurred on the employer's premises." *Id.* (citing *LeBrane v. Lewis*, 292 So. 2d 216, 218 (La. 1974)). "[T]he determinative question is whether the employee's tortious conduct was so closely connected in time, place and causation to his employment duties as to be regarded as a risk of harm fairly attributable to the employer's business, as compared with conduct motivated by purely personal considerations entirely extraneous to the employer's interest." *Id.* (citing *Richard v. Hall*, 874 So. 2d 131, 139 (La. 2004)). "Every course and scope of employment case must be judged under its own set of facts." *Young v. Mooney*, 815 So. 2d 1107, 1111 (La. App. 3rd Cir. 2002).

"Because an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route." *Orgeron on Behalf of Orgeron v. McDonald*, 639 So. 2d 224, 227 (La. 1994). Courts applying this general rule have held that an employee driving a personally owned vehicle while travelling to and from work, and not otherwise engaged in work duties, is not acting in the course and scope of his employment. *See, e.g.*, *Reyes v. Hornbeck Offshore Servs., L.L.C.*, 383 F. App'x 442, 444 (5th Cir. 2010) (affirming summary judgment for employer where employee involved in car crash "was commuting home at the end of the work day in his personal vehicle and was not traveling for business[,]was not given any compensation for his travel to and from work, and, at the time of

the accident, he did not have a company cell phone for conducting business while driving.");
*Winzer v. Richards*, 185 So. 3d 876 (La. App. 2nd Cir. 2016) (affirming summary judgment for employer where employee involved in car crash was no longer working for employer at the time of the accident and was driving home in his own vehicle more than 600 miles from work site); *Black v. Johnson*, 137 So. 3d 170 (La. App. 2nd Cir. 2014) (affirming summary judgment for employer where employee involved in car crash was "not on a work mission" and "merely commuting to work" in his personal vehicle); *Woolard v. Atkinson*, 988 So. 2d 836, 840 (La. App. 2nd Cir. 2008) (affirming summary judgment for employer where employee involved in car crash was commuting to work and his "movements in going to and from work and driving the vehicle to work was not a function of his employment").

  The foregoing general rule is subject to at least three exceptions. "An employee's accident has been found to occur within the course and scope of his employment under following circumstances: (1) the employer provides the transportation the employee uses to go to and from work; (2) the employer provides expenses or wages for the time spent traveling in the vehicle; and (3) if the operation of the vehicle is incidental to or is actually the performance of some employment responsibility." *Young*, 815 So. 2d at 1111; *Iglinsky v. Player*, No. 08-650, 2010 WL 4905984, at *3 (M.D. La. Nov. 24, 2010). For example, the Louisiana Supreme Court concluded that where an employee who was told by his general manager that he was needed for a seven-day shift beginning the next morning, he was acting in the course and scope of employment when he was involved in an accident on the way to report to work, even though he was not paid wages or expenses for his trip. *See Orgeron*, 639 So. 2d 224; *see also Michaleski v. W. Preferred Cas. Co.*, 472 So. 2d 18, 21 (La. 1985) ("An oil company employee, working 'seven days on' with living quarters and a food and gas allowance furnished by the employer,

8

who is returning to the work place from a necessary trip for himself and a co-worker to eat is in the course of his employment."). Similarly, where an employee is commuting to and from home, but is engaged in work activities while driving, the employee may be acting in the course and scope of employment. *See Hopper v. Austin*, 163 So. 3d 8, 16 (La. App. 2nd Cir. 2015) (affirming denial of summary judgment where there was a genuine issue of material fact regarding whether the employee commuting home was "texting" in connection with his job at the moment of the crash); *see also Ellender*, 965 So. 2d at 901 (affirming grant of partial summary judgment against employer where employee was conducting business on telephone during lunch.).

Where an employer is involved in an automobile accident while operating his employer's vehicle, there is a "presumption" under Louisiana jurisprudence that the employee was acting within the course and scope of his employment. *Iglinsky*, 2010 WL 4905984, at *3 (citing *Fackrell v. Gulley*, 246 So. 2d 386 (La. App. 1st Cir. 1971); *Windham v. Security Ins. Co. of Hartford*, 337 So. 2d 577 (La. App. 4th Cir. 1976); *Savoy v. Harris*, 20 So. 3d 1075, 1079 (La. App. 1st Cir. 2009); *Young*, 815 So. 2d at 1111)). "This presumption may be rebutted by clear and convincing evidence." *Id*. (citing *Savoy*, 20 So. 3d at 1079).

Defendants do not dispute Plaintiff's allegation in the Petition that the 2016 Nissan Frontier driven by Mr. Cagle at the time of the crash is owned by Stewart.[3] Given the Fifth

---

[3] In their Answer, Defendants admit to the allegations in Paragraph 4 of the Petition, which asserts that the 2016 Nissan Frontier driven by Mr. Cagle is "owned" by Stewart. (R. Doc. 20 at 2). Defendants further admit that the vehicle is owned by Stewart in their Opposition. (R. Doc. 12 at 2). While the Court need not make any further factual inquiry regarding ownership of the vehicle, the Court notes that the summary judgment type evidence submitted by the parties underscores the pitfalls of engaging in a summary inquiry regarding "course and scope" in a case such as this one. The police crash report indicates that the truck is owned by Stewart. (R. Doc. 4-7 at 4). The Stewart affidavit, however, asserts that the truck was "purchased for Mr. Cagle's exclusive usage" and that Stewart "gave" the truck to Mr. Cagle as a "bonus" for years of service. (R. Doc. 12-2 at 2). It further states that while Stewart "provided gas, maintenance and insurance" for the truck, it was not given "as an employment related necessity" and "did not contain any decals or stickers" advertising for Stewart or identifying Stewart as its owner. (R. Doc. 12-2 at 2). Defendants do not, however, submit any documents providing that Mr. Cagle reported the truck as income on his tax returns or otherwise claimed ownership of the vehicle, or that the title was in his name.

9

Circuit's direction in *Smallwood*, the Court finds it inappropriate to conduct a summary inquiry in this case. The Court recognizes that some decisions have looked to summary judgment type evidence in determining whether plaintiffs were acting in the course and scope of employment in the context of determining whether the employers were entitled to immunity pursuant to the Louisiana Workers' Compensation Act. *See Serrano v. Otis Elevator Co.*, No. 16-15460, 2017 WL 479576, at *3 (E.D. La. Feb. 6, 2017) (citing cases). In this case, however, Plaintiff's allegation that Mr. Cagle was driving a vehicle owned by his employer at the time of the crash, which has been admitted, creates a presumption that Mr. Cagle was acting in the course and scope of employment. In addition to the general "heavy" burden on removing defendants to demonstrate that a non-diverse defendant was improperly joined, the Defendants in this case also carry burden on the merits to demonstrate that Mr. Cagle was <u>not</u> acting within the course and scope of his employment at the time of the accident. *See Andrews v. Exxon Corp.*, No. 92-0119, 1993 WL 192209, at *3 (E.D. La. May 27, 1993) (denying summary judgment for employer-defendant where it did not address the presumption). Defendants do not address this presumption in their briefing, much less rebut it.[4]

Given the allegations in the Petition, and the legal presumption discussed above, the Court concludes that Defendants have not demonstrated that Plaintiff has no possibility of recovery against Stewart. Defendants have not directed the Court to any decision finding that a tortfeasor's employer was improperly joined as a defendant where the tortfeasor allegedly caused an automobile crash while driving a vehicle owned by his employer. Similarly, Defendants have not directed the Court to any decision stating that a plaintiff fails to state a claim upon which

---

[4] Defendants specifically cite *Winzer*, *Black*, and *Woolard* in support of the proposition that "Louisiana tort law holds that the employer is not vicariously liable for the torts of the employee who is simply driving home in a company owned vehicle." (R. Doc. 12 at 4). To be clear, those decisions all involved personally owned vehicles and do not address the presumption of "course and scope" where the employee is driving an employer's vehicle.

10

relief can be granted against a tortfeasor's employer where the tortfeasor was alleged to have been driving a vehicle owned by his employer at the time of the underlying accident.[5]

Finding improper joinder under the foregoing circumstances would deprive plaintiff from the opportunity to conduct discovery regarding his allegations. If Stewart should obtain dismissal of the claims brought against it in state court, then the remaining defendants may seek to remove the action at that time, provided that procedural requirements provided in 28 U.S.C. 1446 are satisfied.

### IV. Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that Plaintiff's Motion to Remand (R. Doc. 4) be **GRANTED**, and the action be **REMANDED** to the 19th Judicial District Court, East Baton Rouge Parish, Louisiana.

Signed in Baton Rouge, Louisiana, on October 13, 2017.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] Defendants rely on two decisions for the proposition that "[a]n allegation that an employee is in the course and scope of his employment without factual basis is a conclusion of law." (R. Doc. 12 at 12). Only one of those two decisions affirmed dismissal for failure to state a cause of action, and it is distinguishable because the vehicle at issue was the employee's bicycle. *See Fasullo v. Finley*, 782 So. 2d 76 (La. App. 4th Cir. 2001) (affirming dismissal of action as failing to state a cause of action against tortfeasor's employer where tortfeasor allegedly struck the plaintiff while riding his bicycle to work). In the second decision, the Court held the pleadings were sufficient to survive dismissal because the plaintiff alleged that the tortfeasor was an employee and that he was on an errand or mission for his employer. *Dilworth v. Hebert*, 7 So. 2d 626, 627 (La. App. 1st Cir. 1942) (reversing dismissal).